UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| **CURTIS BROOM, JR.,** | } |
| | } |
| **Plaintiff,** | } |
| | } |
| v. | } Case No.: 2:16-CV-0028-RDP |
| | } |
| **AXA ADVISORS, LLC &** | } |
| **AXA NETWORK, LLC,** | } |
| | } |
| **Defendants.** | |

## MEMORANDUM OPINION

This matter is before the court on Defendants' Motion to Dismiss and Compel Arbitration. (Doc. 31). The Motion has been fully briefed. (Docs. 37 and 40).

This case arises out of the termination of Plaintiff Curtis Broom from his work as a financial advisor and independent contractor with the Defendants, AXA Advisors, LLC ("AXA Advisors") and AXA Network, LLC ("AXA Network"). Plaintiff claims that he was terminated because of his race and his complaints of race discrimination on behalf of himself and other African-American employees. Defendants respond that Plaintiff was terminated because he engaged in business transactions that violated AXA Advisors' policies.

Regardless of the merits of Plaintiff's claims, Defendants seek to compel arbitration under the Federal Arbitration Act (FAA), Rule 13200 of the Financial Industry Regulatory Authority ("FINRA"), and several arbitration agreements entered into by the parties. Plaintiff concedes that all claims from July 1, 2013, until his termination in May, 2014, are fully arbitrable. However, he contends that, for several reasons, claims that accrued in the eighteen months prior to July 1, 2013, are not subject to arbitration. This very well may be true. But, as

explained below, it is wholly irrelevant to the current motion. This is because the claims asserted in Plaintiff's Complaint accrued at the date of his termination, and Plaintiff readily concedes that, at that time, he was subject to an arbitration agreement. Therefore, Defendants' Motion to Dismiss and Compel Arbitration is due to be granted.

I.     BACKGROUND

In May 1981, Plaintiff joined The Equitable Life Insurance Society of the United States ("Equitable Life"), predecessor to former defendant AXA Equitable, as a financial agent under a three year contract (the "1981 Agreement"). (Doc. 31-1 at ¶¶ 8-9, Ex. A p. 2). The 1981 Agreement did not contain an arbitration provision, but it did provide that the agreement would be subject to any rules and regulations that the Equitable made or would make concerning the conduct of its business. (Doc. 31-1, Ex. A p. 3).

In May 1984, upon the expiration of the 1981 Agreement, Plaintiff as an independent contractor entered into a new, superseding agreement with Equitable Life (the "14th Edition Agreement"). (Doc. 31-1 at ¶ 10, Ex. B pp. 1-2). Similar to its predecessor, the 14th Edition Agreement did not contain an arbitration provision; rather, it provided that it was subject to other rules and regulations as established by the Defendants. (Doc. 31-1, Ex. B p. 1). The 14th Edition Agreement was effective through January 2000, when AXA Network assumed all previously existing contractual rights and obligations between Equitable Life and Plaintiff. (Doc. 31-1 at ¶ 11, Ex. C pp. 1-2).

The next agreement relevant to this case became effective in July 2013, when Plaintiff entered into a 14th Edition RB (the "Retiree Agreement") with AXA Network. (Doc. 31-1 at ¶ 12, Ex. D). While maintaining Plaintiff's status as an independent contractor, and unlike the

previous agreements, the Retiree Agreement included an express arbitration provision which provided:

> The Associate agrees, as a condition of association with AXA Network, that any controversy or dispute arising under this Agreement out of the Associate's association with AXA Network or any affiliate or subsidiary thereof, including, but not limited to, claims of discrimination and/or harassment under federal or state statute or otherwise, will be submitted to final and binding arbitration upon demand of either party… Any arbitration pursuant to this Agreement shall be conducted in accordance with, and governed by the Code of Arbitration Procedures of FINRA, if within the FINRA's jurisdiction, and if not, then by and in accordance with the rules and procedures of the American Arbitration Association for commercial arbitrations.

(Doc. 31-1, Ex. D p. 3)

Additionally, in compliance with FINRA obligations, Plaintiff made several Form U4 submissions in April 2000, January 2001, September 2009, and February 2013. (Doc. 36-5 – 36-8). All of these submissions included arbitration provisions. (Doc. 36-5 ¶ 5, 36-6 p. 12, 36-7 p. 2, 36-8 p.1). The September 2009 and February 2013 Form U4 submissions directly reference FINRA Conduct Rule 3080 and FINRA Rule 2263, respectively. (Doc. 36-7 p. 2, 36-8 p. 1). Both of those rules mandate arbitration. (*Id.*).

Plaintiff was terminated in May 2014. (Doc. 1 p. 4). The reasons behind the termination are disputed. Plaintiff claims that he was fired because of his race and because he complained that African-American employees were treated in an unfair and discriminatory manner. (*Id*. at 3-4). He claims that he complained that not enough African-Americans were being hired and that leads were not being distributed fairly to African-American employees on account of race. (*Id*.). Defendants assert that Plaintiff was terminated because he "conducted business transactions that violated AXA Advisors' policies." (Doc. 31 p. 9).

After his termination, Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"), alleging violations of Title VII of the Civil

Rights Act of 1964. (Doc. 31 p. 7). That charge was dismissed because the EEOC determined that Plaintiff was an independent contractor, not an employee. (Doc. 31 p. 7). On January 6, 2016, Plaintiff initiated this lawsuit asserting claims of discrimination and retaliation on the basis of race under 42 U.S.C. § 1981. (Doc. 31 pp. 7-8). On June 3, 2016, after Plaintiff refused to consent to arbitration Defendants filed the instant Motion to Dismiss and Compel Arbitration. (*Id*. at p. 8).

## II.     APPLICABLE LAW

Pursuant to the Federal Arbitration Act ("FAA"), a written arbitration provision in a "contract evidencing a transaction involving [interstate] commerce" is "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."  9 U.S.C. § 2. Section 3 of the FAA provides that a district court must compel arbitration and stay the underlying action if the parties had an earlier agreement to arbitrate their dispute. 9 U.S.C. § 3.

The Supreme Court has held that the FAA represents a "liberal federal policy favoring arbitration agreements." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983). "Absent some violation of public policy, a federal court must refer to arbitration any controversies covered by the provisions of an arbitration clause." *Telecom Italia, SPA v. Wholesale Telecom Corp.*, 248 F.3d 1109, 1114 (11th Cir. 2001). "However, the policy fostered by the FAA 'does not require parties to arbitrate when they have not agreed to do so.'" *Wheat, First Sec., Inc. v. Green*, 993 F.2d 814, 817 (11th Cir. 1993) (quoting *Volt Info. Sciences, Inc. v. Bd. of Trustees of Stanford Univ.*, 489 U.S. 468, 478 (1989)).

"Unless the parties clearly and unmistakably provide otherwise, the question of whether the parties agreed to arbitrate is to be decided by the court, not the arbitrator." *AT&T*

*Technologies, Inc. v. Comm. Workers of Am.*, 475 U.S. 643, 649 (1986). When asked to compel arbitration of a dispute, the court's first task "is to determine whether the parties agreed to arbitrate that dispute." *Chastain v. Robinson-Humphrey Co., Inc*., 957 F.2d 851, 854 (11th Cir. 1992) (internal quotations and citation omitted).

### III.    DISCUSSION

Plaintiff does not dispute the validity of the arbitration provision of the Retirement Agreement. In fact, he fully concedes that "all of his claims from July 1, 2013 until his termination in May of 2014 are governed by the arbitration provision." (Doc. 37 p. 4). But Plaintiff contends that any claims that accrued between January 6, 2012, and July 1, 2013 are not subject to arbitration for two reasons. (*Id*.). First, he argues that FINRA rules mandating arbitration are not applicable to claims against AXA Network because it is not a FINRA member and he never explicitly agreed to arbitrate with them prior to the July 1, 2013 Retirement Agreement. (*Id*. at 5-6). Second, Plaintiff argues that all claims dealing with the sale of insurance products prior to July 1, 2013 are not subject to mandatory arbitration under FINRA Rule 13200(b). (*Id*. at 6-7). These arguments are inapposite, however, because, in his Complaint, Plaintiff made no claims that would have accrued prior to July 1, 2013. Both of the claims asserted in his Complaint relate to his termination, which occurred in May 2014. (Doc. 1).

In particular, in his Complaint, Plaintiff asserts in Count One that he was terminated due to his race in violation of 42 U.S.C. § 1981 (Doc. 1 pp. 4-5), and in Count Two that he was terminated in retaliation for making complaints of race discrimination, also in violation section 1981. (Doc. 1 p. 5). A claim for wrongful termination generally accrues on the date of the claimant's termination. *See Steven v. McKillop*, 198 F.App'x 816, 817 (11th Cir. 2006) (holding that a wrongful termination complaint accrues on the date of termination). *See also Mullinax v.*

5

*McElhenny*, 817 F.2d 711, 716 (11th Cir. 1987) (holding that a cause of action under 42 U.S.C. § 1983 does not accrue until a Plaintiff knows or has reason to know that she has been injured.)

Although the alleged discriminatory activities about which Plaintiff *complained* preceded his termination, the claims asserted in the Complaint are based on his termination. Because Plaintiff concedes that both his termination claims accrued after July 1, 2013, they are subject to arbitration. Accordingly, all claims asserted in the Complaint accrued on the date of Plaintiff's termination (in May 2014). Defendants' Motion to Compel Arbitration is due to be granted.[1]

## IV.     CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss and Compel Arbitration (Doc. 31) is due to be granted. A separate order will be entered.

**DONE** and **ORDERED** this August 15, 2016.

_____
**R. DAVID PROCTOR**
UNITED STATES DISTRICT JUDGE

---

[1] To the extent Plaintiff argues that there are claims in addition to those related to his termination that have been asserted in Counts One and Two of his Complaint, that argument fails for two reasons. First, the language in the Complaint does not support such an argument. Second, such an argument is a non-starter because, even if the language of the Complaint supported it, Plaintiff's Complaint would violate the rule against impermissible shotgun pleading. *See Anderson v. Dist. Bd. of Trs. of Cent. Fla. Cmty. Coll.*, 77 F.3d 364, 366 (11th Cir. 1996) (stating that multiple claims should be presented separately in adherence to Federal Rule of Civil Procedure 10(b)).